WILSON, Circuit Judge, concurring in part, dissenting in part:
In light of Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), I concur in the result reached by the majority with respect to most of Borden’s claims.[1] I offer this separate opin *824 ion, however, to address two concerns regarding the Court’s analysis.

1. Alabama Rule of Criminal Procedure 32.6(b)

The majority holds that “a summary[2] dismissal of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is ... a ruling on the merits.” Majority Op. at 813. I disagree with that categorical approach.
To begin, I agree with the majority that, in substance, select applications of Rule 32.6(b) in this case were essentially merits adjudications. Others, however, were clearly not, as demonstrated by the Alabama Court of Criminal Appeals’s language specifically disclaiming that those rulings were merit-based. Here are but a few examples:
The circuit court addressed the merits of this claim, finding that the evidence overwhelmingly established that Borden murdered the two victims and that counsel conceded that fact and focused on a defense of insanity and lack of mental capacity. The trial court determined that Borden could not demonstrate prejudice and that his petition failed to state a claim for relief, so that summary dismissal was appropriate. We adopt the court’s findings of fact and conclusions of law as an alternative holding, but find that the claim was not sujficiently pleaded and need not have been addressed on the merits.[3]
Therefore, in addition to failing to plead the claim with sufficient specificity, Borden has failed to state a claim which would have entitled him to relief.[4].
Thus, the claim was subject to summary dismissal for failure to satisfy the pleading requirements. Moreover, as the trial court found, the claim was meritless .... Summary dismissal of Claim I.L. was proper for this additional reason.[5]
The claim regarding defense counsel’s argument on the legal standard for insanity failed to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P., and it was due to be summarily dismissed. Even if we had addressed the claim on the merits, we would not have found that Borden was entitled to any relief .... [6]
We adopt the trial court’s holding on the merits as an alternative holding to our primary determination that the claim *825 was not pleaded with specificity and was due to be dismissed.[7]
The trial court addressed this claim on the merits and denied it, finding both that Borden failed to allege any prejudice and that most of the information Borden alleged his father would have conveyed in his testimony was presented to the jury by other witnesses .... We agree with the trial court’s analysis of this claim, and adopt its holding as an alternative holding to our primary determination that the claim was not sufficiently pleaded[8]
Even if the claim had not been subject to dismissal based on inadequate pleading, summary dismissal would have been proper because it was meritless.[9]
At one point, the Court of Criminal Appeals even reversed a trial-court ruling that a particular claim “was sufficiently pleaded, but lacked merit,” deciding instead that the claim did not, in fact, conform with Rule 32.6(b)’s specificity requirement and was due to be dismissed on that basis. CCA Op. at 28 & n. 11. Consequently, at least with respect to a large number of its Rule 32.6(b) rulings, I believe the Court of Criminal Appeals intended those rulings to be strictly procedural, not merit-based.[10]
The majority rightly notes that some rules nominally categorized as “procedural” may actually adjudicate substance, such as Federal Rule of Civil Procedure 12(b)(6). See Majority Op. at 812. The majority takes just such a view of Rule 32.6(b): “[T]he Alabama Court of Criminal Appeals, in disposing of claims in the Amended Petition under Rule 32.6(b), necessarily considered the sufficiency of such claims, focusing in on the factors for determining whether the petition presented a case sufficient to warrant relief under Strickland v. Washington....” Majority Op. at 813. In the abstract, this proposition makes good sense. Presumably, a “specificity” bar would hang lower than the threshold for successfully stating a claim that would entitle the petitioner to either relief or further proceedings. Therefore, by failing to plead his claim with sufficient specificity under Rule 32.6(b), Borden would necessarily fail to state a claim for relief. Unfortunately, at least as the rule was applied here, that *826 proposition appears not to have been reflected in practice.
Both the trial court’s Order on Remand and the Court of Criminal Appeals’s Memorandum Opinion divided their resolutions of Borden’s claims into two distinct camps: (1) claims that were dismissed as insufficiently pled under Rule 32.6(b); and (2) claims that were denied on the merits in light of the prevailing legal standard set forth in Strickland.[11] It was only after ruling that many of Borden’s claims failed to conform to Rule 32.6(b)’s specificity requirement and dismissing them accordingly that the Court of Criminal Appeals addressed Strickland. It began a new section of its opinion with the following words:
The trial court determined that several of the claims of ineffective assistance of counsel Borden raised in his petition were not procedurally barred and that they contained a sufficient factual basis to avoid summary dismissal pursuant to Rule 32.6(b), Ala. R.Crim. P. The court considered each of the claims and determined, for the reasons discussed below, that the claims were due to be denied.
CCA Op. at 32. The court then launched into a thorough summary of the legal standards governing ineffective assistance claims, quoting at length from Strickland itself and culminating in the following statement:
With these legal standards in mind, we review the merits of the remaining allegations of ineffective assistance of counsel.
Id. at 34 (emphasis added).
The court proceeded to do just that, analyzing Borden’s remaining claims in ways that bore the clear hallmarks of summary, merit-based adjudications. See, e.g., id. at 35 (“The trial court correctly determined that Borden established neither deficient performance nor prejudice as to this claim.”). And whereas these later rulings clearly evaluated the sufficiency of Borden’s allegations in light of Strickland, most of those that came before — the 32.6(b) rulings — appeared to not.
Upon my initial review of this case, I took the same view as the majority. After all, what metric would the state court use to measure the sufficiency of the pleadings other than the substantive yardstick of Strickland? However, after poring over the state court decisions, I was left with the distinct impression that many of the evaluations actually made were not based on substance, but rather on form — driven, not by the allegations’ sufficiency in relation to the governing substantive law, but instead their conformity with some hypothetical pleading rubric or formula.
For example, Borden was death-eligible only because the trial court found the existence of a sole aggravating factor: “The defendant knowingly created a great risk of death to many persons.” AIa.Code § 13A-5-49(3). In his Amended Rule 32 Petition, Borden argues his penalty-phase counsel was ineffective for failing to object when the prosecutor mischaracterized that aggravating factor for the jury, as well as for failing to challenge that the prosecutor had, in fact, proven the required mental state.[12] See Amended Petition ¶¶ 68-69, 71-73. Borden quoted the statutory lan *827 guage. Id. ¶ 71. He recited the prosecutor’s mischaracterization of that language. Id. ¶ 72. He indicated that he believed the mischaracterization of law “was harmful ... because it misrepresented a lower degree of recklessness than what is legally required .... ” Id. ¶ 73. And he argued that “the state never presented any evidence that Mr. Borden knew there were any people in the house.” Id. ¶ 68. He even stated that had this factor been successfully challenged, “the death penalty would not have even been an option for the jury.” Id. ¶ 69.
Nevertheless, the Court of Criminal Appeals found that these arguments were due to be dismissed pursuant to Rule 32.6(b)’s specificity requirement, reasoning:
Borden failed to present a full disclosure of the factual basis for the ground for relief. Moreover, he presented mere conclusions based on the few facts he provided. Because these allegations do not satisfy the pleading requirements of Rule 32.6(b), Ala. R.Crim. P., the allegations in Claim II.C. were properly dismissed.
CCA Op. at 26. Or:
This claim was due to be dismissed because it failed to satisfy the specificity requirements of Rule 32.6(b), Ala. R.Crim. P.....
Borden failed to plead any facts indicating how he was prejudiced by trial counsel’s failure to object to this alleged mischaracterization of law. Therefore, the claim was not pleaded with sufficient specificity and it was due to be dismissed without further proceedings.
CCA Op. at 27. And after making these 32.6(b) rulings, the Court of Criminal Appeals went on to conduct merits analyses, in the alternative.
I have trouble conceiving of how Borden could have been more specific than he was, or how he could have “failed to present a full disclosure of the factual basis for relief.” I am even more puzzled as to how the court could have believed that Borden failed to indicate in what way he was prejudiced by counsel’s alleged failure to object. The prejudice was not only explicitly pled, it was patently obvious. This was the sole aggravating factor supporting Borden’s death sentence; the prosecutor presented no evidence regarding an essential element; and the prosecutor described the aggravating factor to the jury in a way that eliminated the scienter requirement and relaxed the numerical threshold for persons threatened with harm.[13]
*828 In light of this application and many others like it, I am at a loss to explain the operation of Rule 32.6(b).[14] Under these circumstances, I simply cannot join the majority’s determination that Rule 32.6(b) dismissals categorically constitute rulings on the merits. Specificity rulings may often subsume a substantive evaluation of a claim’s merit in exactly the way the majority perceives. And I agree that where the record supports such a reading, we should treat those rulings as adjudications on the merits under AEDPA. However, if it instead appears that a rule is being applied procedurally, simply to object to a defect in form that does not preclude the possibility that the petitioner has in fact asserted the substance of a colorable federal claim, it simply cannot be credited as a ruling on the merits. See Childers v. Floyd, 642 F.3d 953 (11th Cir.2011) (en banc) (Wilson, J., concurring in the judgment); Wilson v. Workman, 577 F.3d 1284, 1293 (10th Cir.2009) (en banc) (“To be entitled to deference under AEDPA, the state court must similarly decide the ‘substance’ of the claim, which means to ‘apply the controlling legal principles to the facts bearing upon [his] constitutional claim.’ ” (alteration in original) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971))).[15]
*829 “Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.” Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143 (1923). I am concerned that many of the Rule 32.6(b) dismissals run afoul of that admonition. And because there were clear, merit-based alternative rulings for the bulk of those claims at issue in this appeal, I would rely on those rulings to satisfy AEDPA’s prerequisites and avoid today’s unnecessary and problematic decision regarding the status of Rule 32.6(b).[16]

2. Summary Dispositions, Evidentiary Hearings, and AEDPA

The majority’s central holding — that Borden’s claims were adjudicated on their merit when the Alabama state court dismissed them for failing to meet Rule 32.6(b)’s specificity requirement — raises another important concern.
Borden was never afforded an evidentiary hearing. The state court summarily dismissed his claims without granting him an opportunity to develop the factual record. The majority decides that these Rule 32.6(b) dismissals were on the merits, triggering deferential review under AEDPA, because they were the substantive equivalent of dismissals under Rule 4 of the Rules Governing Section 2254 Cases (the “Habeas Rules”) in federal court. Puzzlingly, however, in applying that deference, the majority never once engages with, or even mentions, the substantive pleading burden enforced by Habeas Rule 4. See Habeas Rule 4, advisory committee’s note (“[T]he petition is expected to state facts that point to a real possibility of constitutional error.” (internal quotation marks omitted)).
All adjudications on the merits — including summary dismissals — are entitled to deference under AEDPA. But not all adjudications on the merits decide the same thing. Habeas claims may be dismissed at the pleading stage, for example, because, as pled, they are so “ Vague (or) conclusory’ as to warrant dismissal for that reason alone,” Blackledge v. Allison, 431 U.S. 63, 75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (quoting Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)); or “when viewed against the record,” they may be shown to be “so palpably incredible, so patently frivolous or false, as to warrant summary dismissal,” id. at 76, 97 S.Ct. 1621 (internal quotation marks omitted) (citations omitted). If claims survive these threshold inquiries, they may still be susceptible to summary judgment because there remains no genuine issue of material fact to resolve in further proceedings. Id. at 80-81, 97 S.Ct. *830 1621 (citing Fed.R.Civ.P. 56(e), (f));[17] see also Alabama Rule of Criminal Procedure 32.7(d). Alternatively, when claims are denied at the proof stage — ie. after the proceedings have run their full course — the court has simply decided that the petitioner failed to carry his or her burden of proof.
For many habeas claims, the distinctions among these different dismissals or denials at the various stages of habeas litigation are distinctions without a difference, because those claims do not require any factual development in order for the judge to conclusively evaluate the petitioner’s entitlement to relief. Other types of claims, however, are not similarly susceptible to summary proceedings. See Machibroda, 368 U.S. at 494-95, 82 S.Ct. 510 (“The factual allegations contained in the petitioner’s motion ... related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light.”). That is why federal law prohibits summary dismissals “where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief .... ” Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). So long as a petitioner has raised such a possibility — that, if the facts are fully developed, there is “reason to believe” that he or she “may” be able to demonstrate a constitutional violation — “it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.” Id.; see id. at 298, 89 S.Ct. 1082 (“Petitioners in habeas corpus proceedings ... are entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the. relevant facts.”); see also Blackledge, 431 U.S. at 82 n. 25, 97 S.Ct. 1621 (“But before dismissing facially adequate allegations short of an evidentiary hearing, ordinarily a district judge should seek as a minimum to obtain affidavits from all persons likely to have firsthand knowledge of the existence of any plea agreement.”); Franklin v. Rose, 765 F.2d 82, 85 (6th Cir.1985) (per curiam) (“Even Franklin’s undeveloped allegations satisfied the requirement of Blackledge v. Allison, that a habeas petition must ‘state facts that point to a “real possibility of constitutional error.” ’ ” (citation omitted)).[18]
*831 Federal courts reviewing § 2254 petitions must recognize exactly what federal law requires of habeas petitioners at each stage of habeas litigation. AEDPA mandates deference for all state court adjudications on the merits. But it does so in light of what is required under “clearly established Federal law.” See 28 U.S.C. § 2254(d)(1) (emphasis added). Under that provision, it is our job to determine whether a state court’s merits adjudication falls outside the wide range of objectively reasonable resolutions permissible under that clearly established federal law. See Williams v. Taylor, 529 U.S. 362, 409-10, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). We simply cannot conduct that analysis unless we understand both what burden the state court determined the petitioner failed to carry and what federal law requires of habeas petitioners at that particular stage in the proceedings.
The majority finds Borden’s allegations lacking in prejudice. It does so by briefly comparing Borden’s allegations, as pled, against the evidence of prejudice relied upon by the Supreme Court to find petitioners deserving of habeas relief on similar claims. Majority Op. at 68-69 (citing Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)). But the evidence of prejudice in those cases had been developed during the very proceeding Borden was denied: an evidentiary hearing. And the state court adjudications being reviewed were decisions that the petitioners had failed to prove their entitlement to relief after full proceedings.[19]
Here, conversely, we are reviewing a pleading-stage dismissal. And based on the majority’s own authority for finding Borden’s claims adjudicated on their merits, the question we must ask under § 2254(d) is whether fairminded jurists could disagree that Borden pled facts demonstrating a “real possibility of constitutional error.” We are not asking whether Borden — like Wiggins and Rompida — had actually proven his entitlement to habeas relief beyond any objectively reasonable dissent. If that were the question, the majority would surely be correct to deny relief on all counts — as would virtually any federal court reviewing the dismissal of claims naturally relying on non-record evidence at the pleading stage. Without the aid of legal process and a developed record to rely upon, it would be virtually impossible for any petitioner to carry his or her ultimate burden of proof, let alone to demonstrate that he or she is entitled to habeas relief in federal court under AEDPA’s “doubly deferential” standard of review. See Pinholster, 131 S.Ct. at 1403.[20]
*832 Therefore, when applying § 2254(d) to summary dismissals of such claims in state court, we should not expand the already exceedingly broad sweep of AEDPA deference by enforcing the wrong burden against habeas petitioners. Instead, we must recognize the important distinctions among the different merits adjudications made at different stages in habeas litigation and review a particular state court merits adjudications in light of the decision that court actually made.
Notwithstanding these reservations, I agree with the majority that, if our view is restricted to the allegations contained in his first Amended Rule 32 Petition,[21] Borden is not entitled to federal relief on the vast majority of his claims. This is a closer case, however, than the majority conveys.
As noted above, the majority resolves this case on Strickland’s prejudice prong. When evaluating the potential prejudice of an unprofessional error at the sentencing phase of a death penalty case, a court asks “whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of *833 aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. 2052. To answer that question, the court “reweigh[s] the evidence in aggravation against the totality of available mitigating evidence.” Wiggins, 539 U.S. at 534, 123 S.Ct. 2527. Therefore, naturally, the weaker the evidence of aggravation, the less evidence of mitigation will be needed to create a “reasonable probability” that the sentencer would have struck a different balance. See Strickland, 466 U.S. at 696, 104 S.Ct. 2052 (“[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.”); Williams v. Allen, 542 F.3d 1326, 1343 (11th Cir.2008) (“Further supporting a finding of prejudice is the fact that this case is not highly aggravated.”).
Here, there was minimal evidence of aggravation. The prosecution proved only a single aggravating factor: Borden “knowingly created a great risk of death to many persons” by firing several bullets into a house. Ala.Code § 13A~5-49(3). It did so without providing any evidence that Borden actually knew there were others in the house, and by paraphrasing the aggravating standard for the jury in a way that relaxed its statutory requirements. See note 12, supra. And the jury recommended the death penalty by a vote of 10 to 2 — the bare minimum allowed under Alabama law.[22]
Borden’s chief complaint at issue in this appeal is that counsel was ineffective for failing to contact his treating physicians and present their testimony at the sentencing phase of trial. The majority dismisses these allegations as “boilerplate” and insufficient to establish a reasonable probability that the result of the proceeding would be different:
We are not blind to the possibility that testimony from Borden’s treating physicians at the penalty phase of his trial could have strengthened his ability to fully present the mitigating circumstances he sought to prove to the jury; while the jury had access to Borden’s complete medical history and defense counsel urged the jurors to review that history, we can imagine that hearing testimony from his doctors could have provided a more in-depth view of Bor *834 den’s mental state over the years. But our inquiry into Strickland prejudice requires that we find more than a possibility that the jury could have benefítted from additional testimony that would shed light on evidence already produced for their review.
Majority Op. at 823.
But “the Strickland [prejudice] inquiry requires [a] ... probing and fact-specific analysis.” Sears, 130 S.Ct. at 3266. Had such an inquiry been conducted here, in light of the trial record in this case, I believe Borden may have raised a real possibility of constitutional error.[23]
First of all, I cannot agree with the majority’s characterization that testimony from Borden’s treating physicians would have merely cast additional light on evidence already produced for the jury’s review. There were over 1,100 pages of photocopied medical records submitted, in bulk, as evidence. I have reviewed a number of these records, and it is impossible to believe that, in the hour they deliberated, these lay jurors would have been able to read and digest this information in any way that would have even begun to stand-in for professional summary and analysis. Second, counsel made no attempt — other than a passing request that the jurors review the medical records — to apply the guilt-phase mental-health evidence to the demonstrably lower burden of mental-health mitigation at the penalty phase. See Bell v. Cone, 535 U.S. 685, 706-08 n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (Stevens, J., dissenting) (“It is true that the jury was instructed to consider mitigation from the guilt phase, and also true that [counselj’s brief penalty phase opening referenced the mental health evidence from the guilt phase, but the jury’s whole view of that testimony was influenced by its relation to the debunked insanity defense.”). Third, and most importantly, testimony from Borden’s physicians would have rebutted a powerful and pervasive attack leveled at Borden’s mental-health strategy throughout the entire trial.
The prosecution tirelessly attacked Borden’s affirmative guilt-phase defense, claiming he was “faking” and that his alleged mental health problems were an “excuse.” On cross-examination of both medical experts (neither of whom were among Borden’s treating physicians), the prosecution repeatedly inquired if their tests contained any controls for faking, or what objective proof one could obtain for psychological complaints such as hallucinations. At closing argument, this concerted strategy culminated in a powerful indictment of Borden’s mental-health defense:
And if there was a serious attempt here, folks, to give you the big picture and all *835 the information, we’re missing somebody, aren’t we? The defendant’s mother said that in the year 1993 leading up to these shootings that nobody, nobody, knew the defendant’s condition better than Dr. Shehi.[24] Where is he? Have you seen him?
And don’t you think you’ve got a right to expect if they want to prove something to you, they’re going to bring the person who according to the defendant’s own mother knows more about him than anything [sic] else? And they chose not to. And I think you can infer from that why.
The jury subsequently rejected Borden’s affirmative defense and convicted him of capital murder.
In light of the picture painted by the trial transcript, if Borden’s counsel truly failed to even contact most of Borden’s treating physicians, I am not convinced that this unprofessional oversight would have created only a “possibility that the jury could have benefitted from additional testimony that would shed light on evidence already produced for their review.” Majority Op. at 823. Their testimony was likely the only evidence that could have meaningfully countered the prosecution strategy — a strategy that clearly prevailed at the guilt stage. See Rompilla, 545 U.S. at 385-86, 125 S.Ct. 2456 (finding counsel provided ineffective assistance for failing to uncover evidence that counsel knew the prosecution would put at issue, despite the fact that counsel had conducted a largely extensive background investigation).
Had the factual record been developed, despite the clear inadequacy of most of his other allegations, Borden may still have ultimately proven his entitlement to relief on this claim. Unfortunately, there is no way to be sure; he was never afforded the opportunity.[25]
*836 Because of the unique severity and finality of the punishment, we have always aspired to a higher degree of factual reliability in proceedings leading to a prisoner’s execution. See Brownlee v. Haley, 306 F.3d 1043, 1070 (11th Cir.2002) (“[T]he Supreme Court and this Court ... have repeatedly emphasized the constitutional right of a defendant facing the death penalty to present any relevant evidence of mitigating circumstances. In Lockett v. Ohio, the Supreme Court explained that the ‘qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed,’ .... ” (citation omitted)). Perhaps that is why prisoners facing death sentences are almost never denied even a single post-conviction hearing on their alleged constitutional claims.
The majority decides this case on Strickland prejudice — an inquiry that tests our confidence in a conviction or a sentence. See Cave v. Sec’y for Dept. of Corr., 638 F.3d 739, 748 (11th Cir.2011). And on the underdeveloped record in this case, I cannot say with complete confidence that this sentence of death was untainted by constitutional error. But under AEDPA, it is no longer this Court’s task to evaluate the constitutional sufficiency of Borden’s counsel directly. Rather, we determine if the Alabama Court of Criminal Appeals was objectively unreasonable in evaluating the same. See Pinholster, 131 S.Ct. at 1402 n. 12; Richter, 131 S.Ct. at 788. Under that deferential standard of review, and with the exception of the two claims addressed in footnotes 23 and 25, I concur in the result reached by the majority.

. As indicated below, I believe two of Borden’s claims require remand to the district court — the first, because it received no adjudication on the merits in state court; and the *824 second, because the state court’s disposition was an unreasonable application of clearly established federal law. See notes 23 & 25, infra.

. Courts use the label "summary” to describe both dismissals made after the pleading(s), but without further proceedings, and dismissals (or denials) that are unaccompanied by written explanations. Compare Majority Op. at 808-09, with Harrington v. Richter, - U.S. -, 131 S.Ct. 770, 783, 178 L.Ed.2d 624 (2011). In this case, I use "summary dismissal” in the same fashion as the majority: to refer to pleading-stage dismissals.

. Borden v. State, 891 So.2d 393 (Ala.Crim.App.2003) (emphasis added). For convenience, the remainder of the citations to the Court of Criminal Appeals’s opinion will indicated by "CCA Op. at_”,

. CCA Op. at 13 (emphasis added).

. CCA Op. at 14 (emphasis added).

. CCA Op. at 20 (emphasis added).

. CCA Op. at 23 n. 8 (emphasis added).

. CCA Op. at 25 (emphasis added).

. CCA Op. at 27 (emphasis added).

. Our Seventh Circuit colleagues recently addressed a similar question in Kerr v. Thurmer, 639 F.3d 315 (2011). Faced with a state court dismissal of a claim that was deemed too "underdeveloped” to warrant a merits ruling, the Seventh Circuit decided that such a dismissal was not on the merits, but was simply procedural. Id. at 326 (“[I]f the state court issues a summary order that denies a petition for post-conviction relief and in the order it furnishes a procedural reason for its decision ..., then we must take the state court at its word and treat the decision as procedural, not merits-based.”). Though I part ways with Kerr’s additional determination that such a procedural ruling constituted an independent and adequate state ground that precludes federal merits consideration, see Card v. Dugger, 911 F.2d 1494, 1516-17 (11th Cir.1990) (explaining what constitutes an independent and adequate state ground of decision); Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir.1997) (determining that a specificity requirement such as that at issue in this case was not an "independent” state ground barring federal habeas relief), I agree with its sentiment that we should treat state court rulings as they were intended. See Wilson v. Workman, 577 F.3d 1284, 1293 (10th Cir.2009) (en banc) ("While [AEDPA] vindicates goals such as federalism and comity by affording great deference to state court decisions, it prescribes deference only for decisions the state court has actually made.”).

. For simplicity's sake, I leave aside a third category of dismissals: claims properly dismissed on undisputed grounds of procedural bar, such as failure to raise certain claims on direct appeal, etc. None of those claims are relevant to this appeal.

. At the penalty phase, the prosecutor had simply presented evidence that there were people in the house and that they were positioned such that they may have been in harm's way. There was no direct evidence presented that Borden was aware of how *827 many persons were in the house. While arguing to the jury, the prosecutor paraphrased the aggravating factor to eliminate the scienter requirement and imply that Borden simply had to cause a grave risk of death to "a number of,” as opposed to ''many,” people. In full, the cited comment by the prosecutor reads:
You can tell from what you’ve already heard and what you’ve seen that when you fire a gun and .380 bullets blazing through a house that you can easily kill more than the people that you intend to kill. You create a grave great risk of death to a number of people.

. To offer another example, Borden claimed that counsel was ineffective for failing to object to the prosecutor’s improper interjection of his personal opinion during closing argument. He provided a legal basis for the claim, complete with citations to state and federal cases, and then cited to two pages of the trial transcript where "the prosecutor made statements of personal opinion concerning Mr. Borden in direct contradiction of the law, as described above.”
The Court of Criminal Appeals, however, found that this claim "was not pleaded with sufficient specificity as required by Rule 32.6(b),” stating: “Borden cites to two pages of the record, but he does not identify which of the prosecutor’s statements he finds objectionable. Nor does he make a specific allegation regarding the alleged impropriety of any of the prosecutor's statements contained on *828 those two pages." CCA Op. at 15 (footnote omitted).
Borden's claim on this front is certainly meritless. But it is incorrect to say that he has not made "a clear and specific statement of the grounds upon which relief [was] sought." Rule 32.6(b). Borden stated exactly why the prosecutor's comments were allegedly improper, and he directed the court to a specific two pages of the lengthy trial record. On those pages, there is but one statement of personal opinion offered by the prosecutor: "When they took him off [his medication], he got better, which I think is evidence of the fact that there wasn’t anything wrong with him." Trial Transcript at 1037.

. My confusion is compounded by the fact that, so far as I am aware, summary adjudications "on the merits" can take one of only two forms. Either the petitioner’s allegations, as pled, are insufficient, meaning that the petitioner has failed to state a claim for relief under the relevant standard of pleading. Or, despite the allegation’s facial sufficiency in the abstract, the broader record forecloses any actual possibility of relief. It is worth noting that Alabama Rule of Criminal Procedure 32.7(d) — the provision that provides for summary dismissal of claims and enforces Rule 32.6(b)’s specificity requirement — explicitly provides for both of these merit-based grounds for dismissal in addition to "specificity”:
(d) Summary Disposition. If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.
Rule 32.7(d) (emphasis added). Considering Rule 32.6(b) rulings as being “on the merits,” therefore, creates surplusage within Alabama’s statutory scheme.

. Wilson is instructive here. In that case, the full Tenth Circuit decided that prior state court adjudications of petitioners' claims were not "on the merits” because petitioners were denied evidentiary hearings under a state "procedural” rule that, while substantive, enforced a pleading burden that was unclear and different than that which would have been enforced in federal court. 577 F.3d at 1290-93. The rule enforced, Oklahoma Appellate Rule 3.11(B)(3)(b), provided for evidentiary hearings in cases where counsel was alleged to have provide ineffective assistance for failing to present mitigating evidence only if the petitioner can show "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence.” The prior panel opinion, the result of which was upheld en banc, rejected an argument by the dissent that Rule 3.11 necessarily resolved the merits of the *829 federal constitutional claim: “Although the interplay of these two standards — one more demanding, one less demanding, than the federal — is not clear, we cannot conclude that when the state court denies an evidentiary hearing under Rule 3.11 it has necessarily decided that the federal standard was not satisfied." Wilson v. Sirmons, 536 F.3d 1064, 1081 (10th Cir.2008).

. For the reasons explained in my concurrence in Childers v. Floyd, 642 F.3d 953 (11th Cir.2011) (en banc) (Wilson, J., concurring in the judgment), I must object to the majority's footnote 42, which states that “it matters not for our analysis whether the Court of Criminal Appeals resolved Borden’s claim under Strickland or under a state rule.” Majority Op. at 817 n. 41 (citing Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam)). It matters a great deal. If the state rule enforces a different or higher burden against Borden at the pleading stage, an adjudication under that burden surely cannot be considered "on the merits” of the federal constitutional claim.

.
This is not to say that every set of allegations not on its face without merit entitles a habeas corpus petitioner to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment. Upon remand the warden will be free to malte such a notion [sic], supporting it with whatever proof he wishes to attach. If he chooses to do so, [the petitioner] will then be required either to produce some contrary proof indicating that there is a genuine issue of fact to be resolved by the District Court or to explain his inability to provide such proof. Fed. Rules Civ. Proc. 56(e), (f). 431 U.S. at 80-81, 97 S.Ct. 1621 (footnote omitted).

. Our understanding of what federal law demands of habeas petitioners at the pleading stage is informed by 28 U.S.C. § 2255. The Supreme Court has looked to § 2255 and cases thereunder to map the procedural requirements of federal habeas corpus, stating that "the remedy under § 2255 was designed to be ‘exactly commensurate' with the federal habeas corpus remedy.” Blackledge, 431 U.S. at 74 n. 4, 97 S.Ct. 1621. Therefore, assuming a petition is not subject to Rule 4 dismissal, courts "must accord [a habeas petitioner] an evidentiary hearing [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. If the trial record is inadequate to show conclusively that the movant's conten *831 tions are without merit, the [habeas court] must conduct a hearing.” Anderson v. United States, 948 F.2d 704, 706 (11th Cir.1991) (internal quotation marks omitted) (footnotes omitted).

. I draw these distinction not to say that Borden need not make his substantial showing of a real possibility of constitutional error to obtain further proceedings, but simply to highlight that we risk over-enforcing burdens of pleading if we compare on equal footing evidence of prejudice, as pled, with the evidence of prejudice, as uncovered during an evidentiary hearing.

. The majority implies otherwise, relying on the nature of habeas fact-pleading and Alabama’s requirement that Rule 32 petitioners plead "every fact” needed for their claim. See Majority Op. at 810, 812.
But federal law has long recognized that a burden of proof is often impossible to carry without the benefit of legal process, such as the ability to compel the testimony of reluctant witnesses, because habeas petitioners often do not possess all the facts they need to make out their constitutional claim:
It is now established beyond the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings *832 to applicants, but must do so upon an appropriate showing. And this Court has emphasized, taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, that a habeas corpus proceeding must not be allowed to founder in a 'procedural morass.’
Harris, 394 U.S. at 291-92, 89 S.Ct. 1082 (emphasis added). See also Blackledge, 431 U.S. at 83 n. 26, 97 S.Ct. 1621.
Moreover, federal law does not require that habeas petitioners set forth "every fact” bearing on their claims in their petitions in order avoid summary dismissal. In fact, the text of Habeas Rule 2 in force at the time Borden made his filings specifically instructed petitioners to plead their factual case in summaty form:
(c) Form of Petition..... It shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge and shall set forth in summaty form the facts supporting each of the grounds thus specified.
Habeas Rule 2 (effective Aug. 1, 1982) (emphasis added). See Cuadra v. Sullivan, 837 F.2d 56, 58 (2d Cir.1988) ("Although the Habeas Rules contemplate more than the 'notice' pleading envisioned by the Federal Rules of Civil Procedure, they do not require that the petitioner plead evidentiary detail in his petition. Rather, the Habeas Rules require that the petitioner set forth facts supporting the grounds of the petition 'in summary form.' " (citations omitted)); see also Spaziano v. Singletary, 36 F.3d 1028, 1031 n. 2 (11th Cir. 1994) ("Although the habeas rules require more than notice pleading, and some factual specificity will often be helpful, or even necessary, a habeas petition should not resemble a treatise.”).

. The majority relies on Powell v. Allen, 602 F.3d 1263, 1273 (11th Cir.2010) (per curiam), for this limitation. Majority Op. at 816. Though the relevant language in that case was uncited, I concede that, in the wake of Pinholster, its conclusion seems sound. I am troubled by the fact, however, that such a limitation essentially renders the drafting and filing of a separate federal petition a meaningless formality. For a merits review as undertaken in this case, the court would not even need to read it. This seems strangely at odds with a well-developed body of exhaustion-requirement caselaw allowing § 2254 petitioners to retool their federal allegations, so long as the substance of their claims was fairly presented to the state court. See Vasquez v. Hillety, 474 U.S. 254, 258-60, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); Kelley v. Sec'y for Dept. of Corr., 377 F.3d 1317, 1344 (11th Cir.2004) (“We recognize that habeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance.”); see also Childers (majority opinion) ("The concept of an 'adjudication on the merits’ is the corollary of the long-held requirement that a state prisoner first exhaust his claims in state court.”).

. The majority asserts that, "In Borden's case, we must determine whether the facts pled in his Amended Petition establish that, had his counsel conducted a reasonable investigation and presented additional mitigating evidence, there is a reasonable probability that the jury would have recommended — and the judge would have imposed — a sentence of life without parole." Majority Op. at 820. The standard actually set by Strickland reads as follows: "When a defendant challenges a death sentence ..., the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” 466 U.S. at 695, 104 S.Ct. 2052 (emphasis added). Though it is a minor distinction, in the context of Alabama’s capital sentencing regime, it is an important one. Strickland's rule is phrased in the negative: "the balance of aggravating and mitigating circumstances did not warrant death.” Death recommendations by Alabama juries must be made by a vote of at least 10-2, whereas a recommendations of life must be made by a vote of 7-5. Ala.Code § 13A-5-46(f). Since Alabama's death penalty statute does not create a binary structure (allowing for the possibility of a hung jury) and Borden's death recommendation was 10-2, Strickland’s rule would have been satisfied if Borden had changed only one juror's mind, not five. Cf. Wiggins, 539 U.S. at 537, 123 S.Ct. 2527 (“Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance.” (emphasis added)).

. This specific allegation of error is one of those for which the Criminal Court of Appeals’s opinion contains no clear merit-based alternative ruling to its Rule 32.6(b) determination. Borden made this allegation alongside others claiming counsel was ineffective for not calling medical experts to testify at the penalty phase of trial. Faulting Borden for failing to "identify what type of mental health expert he believed should have been presented at the sentencing phase, or how that expert’s testimony would have differed from the testimony presented at the guilt phase," the court affirmed the trial court’s dismissal for lack of specificity. CCA Op. at 26. But the ruling was completely non-responsive to Borden's claim that his attorneys failed to present testimony from any of his prior "mental health care providers.” See Amended Petition ¶ 66. Had the majority avoided its categorical treatment of Rule 32.6(b), I believe this is one of the rulings that would have been difficult to categorize as truly "on the merits” of the federal constitutional question. Consequently, I dissent from the majority's affirmance of the district court's denial of this claim, and I would remand it to the district court for de novo review and further factual development.

. Dr. Shehi was the physician treating Borden just before the incident. Borden’s mother testified that Dr. Shehi was more familiar with Borden's state of mind during the relevant time period than any other person.

. I also dissent from the majority’s affirmance of the district court's denial of Borden’s claim that counsel was ineffective for failing to investigate and present evidence of Borden's significant religious activities. Specifically, Borden contended that he was deeply religious, and that he and his wife were so active in their church that the pastor asked them to establish their own congregation. Borden asserts that his religious activities constituted an additional mitigating factor that would have counseled the jury against voting for the death penalty.
The trial court found this claim sufficiently pleaded, but denied it on a summary judgment basis. The Alabama Court of Criminal Appeals affirmed, stating:
Although we cannot say, based on the record before us, that trial counsel knew about Borden’s religious activities and made a decision not to present them, we agree with the trial court that presentation of the evidence could have severely damaged the defense theory. As such, the trial court correctly determined that Borden could not establish that counsel’s failure to present evidence of his religious activities constituted deficient performance. Borden also could not establish that the failure to present evidence of the religious activities resulted in prejudice to his defense. There is no reasonable probability that, had the evidence been presented, Borden would not have been sentenced to death. Therefore, no material issue of law or fact existed and the trial court correctly dismissed the claim.
CCA Op. at 38.
But under federal law, summary judgment denying Borden the opportunity to present evidence on a sufficiently pleaded claim is proper only when the record conclusively shows that the petitioner is not entitled to relief. Though it is possible — perhaps even likely — that, if developed, Borden’s purported evidence of mitigation would have done violence to his mental-health strategy or failed to rise to provide sufficient prejudice under *836 Strickland, it is entirely possible that it would have not. Given this ambiguity, summary judgment was entirely inappropriate. See note 18, supra; 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.”); Fontaine v. United States, 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) ("On this record, we cannot conclude with the assurance required by the statutory standard 'conclusively show’ that under no circumstances could the petitioner establish facts warranting relief under § 2255; accordingly, we vacate the judgment of the Court of Appeals and remand to that court to the end that the petitioner be afforded a hearing on his petition in the District Court.” (emphasis added)); Anderson, 948 F.2d at 706.